**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   05 CV 1061 (NG) (KAM)
**ROBERT SPARKS, o/b/o himself and all others**
**similarly situated; and MENTAL DISABILITY**
**LAW CLINIC OF TOURO LAW CENTER,**
o/b/o its constituents,

                                 **Plaintiffs,**

     -against-                                   **OPINION AND ORDER**

**CHARLOTTE SELTZER, in her official**
**capacity as Executive Director of Creedmoor**
**Psychiatriac Center; and PAULETTE FLOYD,**
**in her official capacity as Treatment Team**
**Leader of Creedmoor Psychiatric Center,**

                                 **Defendants.**
-------------------------------------------------------------------X

**GERSHON, United States District Judge:**

       Seeking declaratory and injunctive relief, plaintiffs filed suit pursuant to 42 U.S.C. § 1983 alleging that certain policies in place at the Creedmoor Psychiatric Center ("Creedmoor") violate the First and Fourteenth Amendments. They now seek class certification with respect to one of their claims. Plaintiff Robert Sparks, a patient at Creedmoor who currently resides on ward 6A, building 40 ("Ward 6A"), seeks to represent the class of all individuals (a) who are presently confined or who will be confined in the future on Ward 6A, and (b) who will receive visitors during their period of confinement. Plaintiff Mental Disability Law Clinic of Touro Law Center ("Law Clinic"), whose supervising attorney represents Sparks, does not seek to represent a class, but asserts standing under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801 *et seq*. Defendants Charlotte Seltzer and Paulette Floyd, respectively the Executive Director and Treatment Team Leader of Creedmoor, oppose the motion for class certification, arguing that

1

plaintiffs fail to satisfy the requirements of Federal Rule of Civil Procedure 23. For the reasons set forth below, plaintiffs' motion for class certification is granted.

## FACTS

Creedmoor is a psychiatric hospital operated by the New York State Office of Mental Health. Plaintiffs challenge the constitutionality of three policies that they allege to be in place on Creedmoor's Ward 6A. Only one of these is being challenged by Sparks on behalf of the putative class; accordingly, the other two will not be addressed in this decision.[1] Plaintiffs allege that, pursuant to a policy in place on Ward 6A, hospital staff members are required to be present during patient visits with outside guests. All such visits take place in a certain room on Ward 6A designated as the visiting room. Plaintiffs contend that the alleged policy violates the rights of free speech and association guaranteed to Ward 6A patients by the First and Fourteenth Amendments, and that, since the policy was implemented by defendants under color of state law, defendants are liable to them under 42 U.S.C. § 1983. Defendants dispute the existence of the policy.

As a remedy for the class claim, plaintiffs ask the court to issue the following declaration: "that by promulgating and subjecting plaintiff Sparks and putative class members to a policy in which hospital staff sit in and monitor ward visits, even when the patient does not pose a threat to ward security or management, defendant Floyd has violated plaintiff Sparks and class members' right

---

[1] Initially, plaintiffs sought class certification with respect to a second claim, concerning access to the ward's pay telephone, but withdrew that part of their motion following oral argument. In a letter to the court dated September 1, 2005, Sparks's counsel states: "[I]nterviews with patients have revealed that apparently only plaintiff Robert Sparks has been prohibited from using the ward telephone on particular days. Hence, while the plaintiffs seek certification on the first cause of action, which challenges the supervision of visits, the plaintiffs no longer seek certification on the second cause of action, which challenges a prohibition on the use of the ward telephone by Mr. Sparks."

of communication and association under the First and Fourteenth amendments to the United States Constitution and has further violated 42 U.S.C. § 1983." Plaintiffs also seek injunctive relief as follows: an order "directing defendant[s] Seltzer and Floyd to permit patients to engage in visits with family and friends without any staff supervision in the immediate area of the visit unless staff have a highly articulable basis to believe that the visit will result in the smuggling of contraband or otherwise adversely impact on ward security."

In support of their motion for class certification, plaintiffs submit sworn statements from various patients, family members, and attorneys. According to Mr. Sparks, he is visited regularly at Ward 6A by his mother, sister, and other family members. Some time in 2004, Creedmoor staff members began supervising his visits, remaining physically present in the visiting room for their duration. He has also observed staff members sitting in on other patients' visits.

Patricia Hargett, the mother of Ken Kusulas, who was confined to Ward 6A for approximately two years, until November 2004, states that she visited her son once per month during the six months prior to his discharge. During each visit, a Creedmoor staff member sat in the visiting room with her and her son. She complained about this to defendant Floyd, who allegedly told her that, after a patient was caught smuggling contraband onto the ward, the hospital adopted a policy requiring staff members to attend all patient visits. Similarly, Adele Alladin, the mother of Shawn Alladin, who was confined to Ward 6A for approximately two and one half years, from March 2002 to September 2004, asserts that she visited her son approximately four times per week during his confinement, and that, at some point during this period, staff members began supervising her visits. She states that hospital staff members told her that a policy of supervised visitation was adopted on Ward 6A after a patient brought contraband onto the ward.

Three current patients on Ward 6A, Edgard Gauthier, David Romnieu, and Patrick Basil, assert that, since the start of their confinement, most of their visits with family members have been attended by a hospital staff member, and that hospital staff members told them that a policy of supervised visitation was adopted to prevent contraband from being brought onto the ward. Ernest Nieves is also a patient currently confined on Ward 6A. He, too, asserts that hospital staff members regularly sit in on his visits with family members. He contends that the supervision of visits started after another patient was caught smoking in the bathroom.

Maureen Gest was employed by Mental Hygiene Legal Services ("MHLS") from 2002 through 2004, during which time she provided legal services to patients confined on Ward 6A. According to Ms. Gest, during her tenure at MHLS, approximately twenty six to twenty seven patients resided on Ward 6A at any given time, and patients turned over at the rate of approximately three per year. During this time period, Ms. Gest asserts, based on personal observations and conversations with patients, that ten to twelve patients received visitors on a weekly basis, and twelve to fourteen additional patients received visitors on a less frequent basis.

William Brooks is counsel for plaintiff Robert Sparks, and supervising attorney at plaintiff Law Clinic. He asserts that he has specialized in mental health law since 1981 and has litigated numerous cases on behalf of mentally ill individuals, including four class actions in this circuit. He contends that institutionalized mentally ill individuals generally lack knowledge of their rights and are unlikely to seek legal assistance on their own account.

In opposition to plaintiffs' motion for class certification, defendants submit affidavits from Samuel Markow and Jean Louis. Mr. Markow has been the Chief of Mental Health Treatment Services for Ward 6A since December 2003. Prior to that, he was the Treatment Team Leader for

Ward 6A. As Chief of Mental Health Treatment Services, he is responsible for supervising the day-to-day operations and provision of services for Ward 6A and is the direct supervisor of the Treatment Team Leader. Mr. Markow denies the existence of a policy requiring Creedmoor staff members to be present during patient visits. He asserts that, to his knowledge, Creedmoor never received a complaint from any patient or visitor concerning this alleged policy prior to the commencement of this action.

Mr. Louis has been a Mental Health Therapy Aide on Ward 6A for nine years. According to Mr. Louis, patient visits are not supervised unless supervision is specifically ordered by a psychiatrist or by the nurse in charge of the ward. As part of his job, Mr. Louis sometimes escorts patients to the visiting room for visits. He asserts that, on such occasions, if supervision has been ordered, he remains in the visiting room during the visit; otherwise, he monitors the visit from the nurses' station via a closed circuit camera system that does not transmit audio. Mr. Louis contends that he has never supervised one of Mr. Sparks' visits and knows of no other staff members who have supervised Mr. Sparks' visits.

## DISCUSSION

### I. Requirements of Rule 23(a)

Federal Rule of Civil Procedure 23(a) sets forth certain prerequisites to a class action lawsuit:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Before certifying a class, a district court must be persuaded, "after a rigorous

analysis, that the prerequisites of Rule 23(a) have been satisfied." *Caridad v. Metro-North Communter Railroad*, 191 F.3d 283, 291 (2d Cir. 1999) (quoting *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982)). The party seeking to certify a class bears the burden of demonstrating numerosity, commonality, typicality, and adequacy. *Id*. Although "a motion for class certification is not an occasion for examination of the merits of the case," *id*.; *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim. *General Telephone*, 457 U.S. at 160.

### A. Numerosity

Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Determination of the practicability of joinder of all putative class members depends on all of the circumstances surrounding a case, not on mere numbers. *Id.* at 936. Here, the circumstances support a finding that the numerosity requirement has been met.

It may be inferred, based on the affidavits submitted by plaintiffs, that approximately twenty six patients reside on Ward 6A at one time, most of whom, at some point during the pendency of their confinement, will receive a visitor. Given the status of these putative class members as mentally ill individuals institutionalized in a public hospital, it is likely that their financial resources are insubstantial, and that their abilities to institute individual lawsuits are limited. (Mr. Brooks has indicated that neither he nor the Law Clinic possess the resources to prosecute in excess of twenty

actions on behalf of the patients on Ward 6A individually.) This weighs in favor of finding that the numerosity requirement is satisfied. *Id.* at 936. The fluid composition of the class, with patients periodically joining and leaving Ward 6A, also weighs in favor of finding that the numerosity requirement is satisfied, as does plaintiffs' request for prospective injunctive relief, which would affect future class members. *Id.*

### B. Commonality and Typicality

The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical, and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *General Telephone*, 457 U.S. at 157 n.13.

Here, the existence of the alleged policy is a question of fact common to all class members, and determination of whether the policy, if proven to exist, violates the Constitution is a question of law common to all class members. Defendants argue that Mr. Sparks' claim is not typical of the putative class claim because his allegations are false: "Because Sparks does not have supervised visits . . . any claim he has is not typical of the claims of individuals, if any, who always or usually have supervised visits." But, "[i]n deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class." *Caridad*, 191 F.3d at 293; *accord Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147, 157 (2d Cir. 2001); *Baffa v. Donaldson, Lufkin & Jenrette*, 222 F.3d 52, 58 (2d Cir. 2000). Essentially, defendants are asking the court to credit the affidavits submitted by Mr. Markow and Mr. Louis over the allegations

contained in the complaint and the affidavit submitted by Mr. Sparks, and to conclude that the policy alleged by plaintiffs either does not exist or has never been applied to Mr. Sparks. "Such a weighing of the evidence is not appropriate at this stage in the litigation." *Id*. The allegations of the complaint, coupled with the affidavits submitted by plaintiffs, are sufficient to demonstrate that maintenance of the action as a class action would be economical, and that Mr. Sparks' claim and the putative class claim are sufficiently interrelated to satisfy the commonality and typicality requirements of Rule 23(a).

**C.     Adequacy**

Generally, adequacy of representation entails inquiry as to whether: (1) the named plaintiff's interests are antagonistic to the interests of other members of the class, and (2) the named plaintiff's attorneys are qualified, experienced and able to conduct the litigation. *Baffa*, 222 F.3d at 60. If Creedmoor does, in fact, have a policy in place that violates the First and Fourteenth Amendment rights of patients residing on Ward 6A, then Mr. Sparks' interest in vindicating his First and Fourteenth Amendment rights would be aligned with the interests of his fellow ward residents.

Defendants argue that Mr. Sparks cannot fairly and adequately protect the interests of the class because his claims are subject to a unique defense: "Here, plaintiff Sparks is subject to the unique defense that his visits are not always or routinely supervised." But this defense is not unique. Insofar as defendants deny the existence of a policy requiring Creedmoor staff members to be present during patient visits, the defense is applicable to all putative class members. Defendants argue implicitly that Mr. Sparks stands in a different position from Ward 6A residents for whom supervision during visits has been specifically ordered by medical personnel. But this argument must

be rejected because it relies on facts that cannot be established at this stage of the litigation.[2]

Moreover, the court is satisfied that Mr. Sparks' counsel, having specialized in mental health law for nearly twenty five years, and having litigated numerous actions, including class actions, on behalf of mentally ill individuals, possesses the requisite qualifications, experience, and ability to fairly and adequately protect the interests of the class.

## II. Requirements of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), a party seeking certification of a class must also demonstrate that the action satisfies one of the conditions set forth in Rule 23(b), which include that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants argue that the instant action fails to satisfy this condition because plaintiffs have not proven that the alleged policies actually exist. But the rule does not require plaintiffs to prove the merits of their case to achieve certification; it merely requires them to establish a colorable claim, which they have done. Plaintiffs allege that Creedmoor has a policy in place that is applicable to all putative class members and that

---

[2]In a letter dated September 2, 2005, defendants' counsel posits another unique defense, informing the court that discovery has revealed that: "Mr. Sparks, the proposed class representative, had written orders for supervised visits in his file. Accordingly, Mr. Sparks clearly is subject to a unique defense that will be a focus of the litigation." The argument concerning this unique defense is unavailing for the same reasons as the argument concerning the prior one– it relies on disputed facts that are intertwined with the merits of the case. More importantly, though, standing in apparent contradiction to defendants' earlier assertions that (1) Mr. Sparks, unlike other putative class members, was not subject to any order by medical personnel concerning supervised visitation, and (2) Mr. Sparks' visits with family members were not, in fact, routinely supervised, it calls into question the veracity of at least one of the alleged factual bases for defendants' opposition to the motion. Especially under these circumstances, the allegation of unique defenses should not bar class certification, but should await further development of the facts.

operates to deprive putative class members of rights guaranteed to them by the First and Fourteenth Amendments. They seek injunctive and declaratory relief with respect to the class as a whole. Accordingly, this action satisfies the condition set forth in Rule 23(b)(2).

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification is granted. The class is defined as follows: all individuals (a) who are presently confined or who will be confined in the future on ward 6A, building 40, of Creedmoor Psychiatric Center, and (b) who will receive visitors during their period of confinement. The class claims are set forth in the complaint as follows: a claim for a declaration by the court that by promulgating and subjecting plaintiff Robert Sparks and putative class members to a policy in which hospital staff sit in and monitor ward visits, even when the patient does not pose a threat to ward security or management, defendant Paulette Floyd has violated plaintiff Robert Sparks' and class members' right of communication and association under the First and Fourteenth Amendments to the United States Constitution and has further violated 42 U.S.C. § 1983, and a claim for an injunction by the court directing defendants Charlotte Seltzer and Paulette Floyd to permit patients to engage in visits with family and friends without any staff supervision in the immediate area of the visit unless staff have a highly articulable basis to believe that the visit will result in the smuggling of contraband or otherwise adversely impact on ward security. Robert Sparks is appointed as class representative and William Brooks is appointed as class counsel.

**SO ORDERED.**

/S/
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
November 22, 2005