```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
ROBERT SPARKS, on behalf of himself and
all others similarly situated, MENTAL
DISABILITY LAW CLINIC, TOURO LAW CENTER,
on behalf of its constituents,

                    Plaintiffs,

      -against-                              MEMORANDUM & ORDER

CHARLOTTE SELTZER, in her official           05-CV-1061 (NG) (KAM)
capacity of Executive Director of
Creedmoor Psychiatric Center, and
PAULETTE FLOYD, in her official capacity
of Treatment Team Leader at Creedmoor
Psychiatric Center,

                    Defendants.

------------------------------------------X
```
MATSUMOTO, United States Magistrate Judge:

      In the above-referenced civil rights law suit brought under 42 U.S.C. § 1983, referred to the undersigned for general pretrial supervision pursuant to 28 U.S.C. § 636(b), non-party Mental Hygiene Legal Service ("MHLS") seeks to prevent its former employee, Maureen Gest, Esq., from testifying, first voluntarily, then pursuant to a subpoena duly served by plaintiffs, at a deposition regarding information she gained during the course of

her employment as an attorney for MHLS.[1]  Specifically, MHLS asserts that disclosure of such information at Ms. Gest's deposition will violate the terms of a confidentiality agreement signed by Ms. Gest at the commencement of her employment with MHLS, and violate New York State Mental Hygiene Law ("MHL") and its related regulations protecting from disclosure patient information.  (Doc. No. 38, Memorandum of Law in Support of Non-Disclosure ("MHLS Mem.") 1, 5.)  For the reasons set forth below, the application by MHLS to quash plaintiffs' subpoena seeking Ms. Gest's testimony is denied.  The parties are directed to schedule Ms. Gest's deposition at the earliest, mutually convenient date.

### I. BACKGROUND

On February 23, 2005, plaintiff Robert Sparks and the Mental Disability Law Clinic, Touro Law Center (the "Touro Clinic")[2], commenced a class action lawsuit on behalf of

---

[1] As set forth herein, MHLS initially attempted to prevent Ms. Gest's voluntary testimony by threatening to "refer" her "sharing [of] privileged information" to the "Tenth District Grievance Committee[,]" a professional disciplinary authority.  (See, e.g., Doc. No. 38, MHLS Memorandum of Law, Ex. E, Letter from Sidney Hirschfeld to Maureen Gest dated June 15, 2005.)  Thereafter, plaintiff served Ms. Gest with a deposition subpoena.  Accordingly, the Court construes MHLS's application as a motion to quash the subpoena.

[2] Pursuant to the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10801, et seq., the Touro Clinic is authorized to provide legal services to institutionalized mentally ill individuals.

individuals who presently are, or who in the future will be, confined in ward 6A, building 40 at Creedmoor Psychiatric Center ("Creedmoor"), a facility operated by the New York State Office of Mental Health. (Doc. No. 1, Complaint ("Compl.") ¶¶ 1-2, 7.) Plaintiffs challenge several of Creedmoor's policies on Constitutional grounds under 42 U.S.C. § 1983. (Id. ¶ 5.) Specifically, plaintiffs assert that Creedmoor's alleged supervision of patient visits with family members and monitoring patients' use of public pay telephones violates plaintiffs' Constitutional rights. (Id. ¶¶ 9, 13-31; Doc. No. 41, Plaintiff's Memorandum of Law in Opposition to the Attempt by Mental Hygiene Legal Service to Preclude Testimony of Maureen Gest ("Pls. Mem.") 3.)

In order to permit discovery of information regarding otherwise confidential information concerning patients at Creedmoor, on July 26, 2005, the Court "so ordered" a Stipulation and Order of Confidentiality governing the disclosure of patient information between the parties and to the Court for the purposes of this lawsuit. (Docket No. 36, Stipulation and Order of Confidentiality.) The Stipulation and Order of Confidentiality provides, *inter alia*, that patient information produced during the course of this litigation will remain confidential. (Id. ¶¶ 6-8, 10-11.) The Stipulation and Order of Confidentiality further provides that production of any materials under the

Stipulation and Order "shall not waive a Party's right to . . . an assertion of any statutory or common law privilege . . . ." (Id. ¶ 3.)

On May 12, 2005, plaintiffs initially submitted an affidavit of Ms. Gest in support of their class certification motion, which has since been granted. See generally, Sparks v. Seltzer, No. 05-CV-1061, 2005 WL 3116635, *2-5 (E.D.N.Y. Nov. 22, 2005). On May 25, 2005, Sidney Hirschfeld, Director of MHLS, sent a letter to Ms. Gest requesting that she stop providing information in this action because the information she gained as an employee was confidential under MHL Article 47 and 22 N.Y.C.R.R. § 694.7, and could not be disclosed without his consent, which he did not provide, or a court order. (MHLS Mem. 1-2, Ex. A.) By letter dated June 2, 2005, Ms. Gest responded and disagreed with Mr. Hirshfeld's interpretation of the confidentiality laws and indicated that the only information she disclosed and would disclose was based solely on conversations and her own observations. (Pls. Mem. 4; MHLS Mem., Ex. B.) Mr. Hirschfeld responded to Ms. Gest by letter dated June 3, 2005, reiterating his interpretation of the state confidentiality laws, and reminding Ms. Gest that all activities undertaken in furtherance of her duties with MHLS are subject to the protections of those laws. (MHLS Mem. 3, Ex. C.) On June 6, 2005, Ms. Gest submitted a second affidavit in support of

plaintiffs' motion for class certification. (Pls. Mem. 5; MHLS Mem., Ex. D.) Mr. Hirschfeld wrote to Ms. Gest again on June 15, 2005, restating his position on the confidentiality of the information provided by Ms. Gest and threatening to refer Ms. Gest for professional sanctions. (MHLS Mem., Ex. E.) Ms. Gest's response, *inter alia*, requested a copy of the confidentiality agreement she signed as part of her employment with MHLS. (Id., Ex. F.) Mr. Hirschfeld forwarded a copy of the agreement to Ms. Gest on June 28, 2005. (Id., Ex. G.)

Following the foregoing exchange of correspondence between Mr. Hirschfeld and Ms. Gest, plaintiffs subpoenaed Ms. Gest to testify at a deposition on September 15, 2005. (Pls. Mem. 5; MHLS Mem. 5.) Upon learning of her upcoming deposition, Mr. Hirschfeld again contacted Ms. Gest by letter dated September 9, 2005, reiterating his position on the confidential nature of the information that was sought to be provided at her deposition, asking that she invoke a privilege pursuant to Mental Hygiene Law Article 47 and 22 N.Y.C.R.R. § 694.7, and stating that the Director of MHLS did not waive the privilege for this lawsuit. (MHLS Mem., 5, Ex. H.) Mr. Hirschfeld also restated his threat that "[he] remain[s] committed to refer" Ms. Gest to the professional disciplinary authorities should Ms. Gest continue

her involvement in this lawsuit.  (Id.)³

Plaintiffs thereafter requested the Court for an order authorizing the testimony of Ms. Gest. (Doc. 35, Letter from William Brooks dated Sept. 12, 2005.)  Mr. Hirschfeld responded by letter to the Court dated September 13, 2005, explaining that if Ms. Gest were allowed to testify, MHLS and its work would be adversely affected.  (Doc. No. 37.)  Counsel for MHLS and the parties participated in a telephone conference with the Court on September 14, 2005, in an attempt to resolve the dispute.  (See Doc. No. 44, Transcript of Civil Cause for Telephone Conference ("Tr.").)  The Court then ordered the interested parties to submit memoranda regarding Ms. Gest's testimony.

**A.  Statutory Mandate Of MHLS**

MHLS is an agency within the New York State judiciary, and has the following statutory duties:  to review the admission of all patients receiving services intended for mentally disabled persons; to inform those patients of their rights to judicial review, legal counsel and an independent medical opinion; to provide legal services for those patients; and to take any legal

---

³ The Court notes with concern that MHLS would threaten the professional license of Ms. Gest if she were to comply with plaintiffs' subpoena.  Rather, MHLS should have sought to quash the subpoena and provided adequate support for its claim of privilege, respectively, pursuant to Fed. R. Civ. P. 45(c)(3)(A) and (B).

action necessary to safeguard those patients' rights.  N.Y. Mental Hyg. L. § 47.03(a)-(c), (e) (McKinney 2006).  MHLS is not a party to this action, however, MHLS's mandate to protect patient rights is similar to that of plaintiff Mental Disability Law Clinic, Touro Law Center.  ((Affidavit of William Brooks dated Oct. 19, 2005 ("Brooks Aff.") ¶ 1 ("The Clinic is authorized to provide legal services to institutionalized mentally ill individuals pursuant to the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.*").)

To carry out these foregoing duties, mental health facilities are to grant MHLS access to their records and personnel.  Specifically, MHLS has been provided with "access at any and all times to any facility . . . to all books, records and data pertaining to any such facility," and authority to "require from the offices or employees of such facility . . . any information deemed necessary for . . . carrying out the services, functions, powers, and duties."  Id. § 47.03(d).  According to MHLS, this broad statutory authority provides MHLS with "unfettered access" to mental health facilities, employees and records in carrying out its duties.  (MHLS Mem. 8.)

**B.  Contentions Of MHLS**

MHLS seeks to preclude the disclosure of all

information, by testimony or otherwise, obtained by Ms. Gest in the course of her duties while employed as an attorney for MHLS. (MHLS Mem. 1.) MHLS claims that the information sought by plaintiffs is privileged under state law. ((MHL Mem. 11) (citing 22 N.Y.C.R.R. § 694.7 and MHL 33.13).) MHLS also asserts that Ms. Gest's testimony is "likely" to harm its relationship with Creedmoor and other psychiatric facilities because the facilities may be less willing to allow MHLS access to the facilities' records and personnel, and less willing to partake in negotiations with MHLS to resolve issues regarding patients for fear that third-parties will commence litigation armed with information obtained from MHLS. (MHLS Mem. 10-11.) MHLS further asserts that as a condition of employment with MHLS, Ms. Gest signed an agreement to keep confidential "all matters of information which [come] to [her] attention through [her] activities with [MHLS]." (MHLS Mem. 1; Ex. G, Statement of confidentiality dated Nov. 26, 2002.) MHLS contends that this confidentiality agreement should bar Ms. Gest's involvement in the present case.

**C. Contentions Of Plaintiffs**

First, plaintiffs contend that Ms. Gest's testimony is relevant to their claims concerning Creedmoor's alleged treatment of patients because Ms. Gest observed Creedmoor staff interacting

with patients.  (See Brooks Aff. ¶¶ 5-7.)  Second, plaintiffs assert that even if the information sought from Ms. Gest is privileged, such information may be disclosed pursuant to a court order.  Third, plaintiffs contend that only Ms. Gest can most efficiently and completely provide necessary testimony regarding the alleged practice of supervising patient visits because she had access to visiting rooms and because she likely has a more reliable memory than Creedmoor's patients who suffer from mental illnesses.  In this regard, plaintiffs point out that the parties' resources would be better spent obtaining relevant information from Ms. Gest rather than deposing patients or their visitors on a "random basis" to ascertain who may recall whether and to what extent patient visits were monitored.  (See Brooks Aff. ¶ 7.)  Fourth, plaintiffs contend that MHLs's fears of harm and lack of access are speculative and, therefore, not sufficient to sustain preclusion of Ms. Gest's testimony.

## II. DISCUSSION

A.   **Threshold Considerations**

   *1.   Relevance of Ms. Gest's testimony*

The Court agrees with plaintiffs that Ms. Gest has relevant and unique information, unavailable from other sources, which is vital to the determination of factual issues in this case, specifically, concerning Creedmoor's alleged policies

regarding the supervision and monitoring of patients. Even if the information sought from Ms. Gest is obtainable from other sources, such as patients and their visitors, Ms. Gest can most efficiently, economically and qualitatively provide information relevant to certain claims and defenses in this action. (See Brooks Aff. ¶¶ 5-7.)

    *2. Standing of MHLS to move to quash the subpoena*

A motion to quash or modify a subpoena may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena. See Nova Prods., Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (citations omitted). Here, a subpoena was issued to and served upon Ms. Gest, therefore, the party entitled to challenge the subpoena under Fed. R. Civ. P. 45(c)(3)(A) is Ms. Gest, unless a showing is made by MHLS that the subpoenaed information is subject to a privilege which MHLS is entitled to invoke.

MHLS has made the requisite showing to move to quash the subpoena directed to Ms. Gest. MHLS has submitted a copy of the agreement signed by Ms. Gest at the commencement of her employment with MHLS, wherein Ms. Gest agreed to keep as confidential, information she gained through her employment with

MHLS.  (See MHLS Mem., Ex. G.)  Moreover, although there is no indication that Ms. Gest intends to disclose any records or files of MHLS or Creedmoor patients, MHLS, through its Director, Sidney Hirschfeld, has invoked a privilege under 22 N.Y.C.R.R. 694.7(b), which provides that "all records and files of the director [of MHLS] may be exhibited only at the discretion of the director or upon order of the court."  Accordingly, MHLS has standing to move to quash the subpoena directed to Ms. Gest.[4]

### B. Applicability Of The Confidentiality Agreement Between MHLS And Ms. Gest

The confidentiality agreement signed by Ms. Gest during the course of her employment with MHLS should not bar her deposition testimony regarding information relevant to the claims and defenses in this action.  When balanced against the need for discovery in litigation, confidentiality agreements cannot preclude otherwise permissible discovery.  "Absent possible extraordinary circumstances . . . it is against public policy for parties to agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law, facts relating to alleged or potential

---

[4] Neither MHLS, Ms. Gest or the parties have indicated whether the plaintiffs have consented to the disclosure of their own files and have thus waived any privilege they may have.  In any event, the Stipulation and Order of Confidentiality should protect the plaintiffs' records.

-11-

violations of such law." Chambers v. Capital Cities/ABC, 159 F.R.D. 441, 444 (S.D.N.Y. 1995). Indeed, "agreements restricting former employee revelation of events in the workplace which are not privileged but may involve violations of federal law have the effect of 'hindering' implementation of the 'Congressionally mandated duty to enforce the provisions' of federal statutes." Id. (citing EEOC v. United States Steel Corp., 671 F.Supp. 351, 357 (E.D. Pa. 1987)). Furthermore, although health care providers and agencies such as MHLS are required to protect confidentiality of patient records, 45 C.F.R. § 164.512(e)(1) allows for disclosure of patient records for judicial proceedings. Anderson v. City of New York, No. 05-Cv-4422, 2006 WL 1134117, at *1 (E.D.N.Y. Apr. 28, 2006). The Court therefore determines that the confidentiality agreement does not bar Ms. Gest from testifying at a deposition or providing a sworn affidavit or declaration in this litigation.

    Moreover, as stated above, the Court agrees with plaintiffs that Ms. Gest has relevant and unique information, unavailable from other sources, concerning Creedmoor's alleged policies regarding the supervision and monitoring of patients. Because of the unique nature of the information Ms. Gest could provide, the interests of the public and, indeed, MHLS, in vindicating patient rights outweighs the interest of upholding a private confidentiality agreement between a state judicial agency

and its former employee. Accordingly, the confidentiality agreement signed by Ms. Gest while employed by MHLS does not bar her testimony in this action.

**C.     Privilege Law**

New York State statutory and regulatory privilege laws do not preclude Ms. Gest's testimony. In federal civil rights cases, decisions of privilege should be determined by federal law. See Fed. R. Evid. 501; Von Bulow v. Von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (citations omitted); Kerr v. United States Dist. Court for the N. Dist. of California, 511 F.2d 192, 197 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976); Burke v. New York City Police Dep't, 115 F.R.D. 220, 224-25 (S.D.N.Y. 1987) (citations omitted); Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987); Skibo v. City of New York, 109 F.R.D. 58, 61 (E.D.N.Y. 1985). State authorities cannot insulate themselves from federal law by creating privileges that frustrate a plaintiff's attempt to pursue federal claims. Kelly, 114 F.R.D. at 656. Therefore, MHL § 47.03 and N.Y.C.R.R. § 694.7 do not control the question of privilege in regard to Ms. Gest's testimony in this federal civil rights case.

Although New York laws regarding privilege are not controlling in federal civil rights actions under § 1983, state laws may underscore important privacy interests that the Court

should consider.  See King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (citation omitted); see also United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)("a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy").  However, "the party seeking to invoke the privilege bears the burden of justifying its application."  King, 121 F.R.D. at 189.  "To justify withholding of evidence in a civil rights action, a claim of privilege 'must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'"  Unger v. Cohen, 125 F.R.D. 67, 69 (S.D.N.Y. 1989) (quoting Skibo, 109 F.R.D. at 61).  MHLS must "do more than alert the court to the state privilege law or the generalized policies which support it."  King, 121 F.R.D. at 189.

Under federal law and the procedures set forth in King, in order to preclude disclosure based upon a claim of state privilege, MHLS must first make a "substantial threshold showing" of a specific harm that the organization should expect as a result of disclosure and how the disclosure will cause that harm.  Unger, 125 F.R.D. at 70 (quoting King, 121 F.R.D. at 189-190); Kelly, 114 F.R.D. at 653.  The "substantial threshold showing" is required because (1) the frequency with which this type of

privilege could be invoked could be harmful to the judicial process without a required demonstration of probable harm, and (2) due to the situation-specific analysis required in this type of case, a showing of harm likely to result from disclosure is necessary for a court to conduct any meaningful balancing analysis of the costs and benefits of disclosure.  Kelly, 114 F.R.D. at 653.  If MHLS is unable to satisfy the "substantial threshold showing" burden, no privilege will be recognized, and the Court will order disclosure.  See King, 121 F.R.D. at 190.  If MHLS can demonstrate specific harm that will likely result from disclosure, the Court then must balance the interests of the plaintiffs and MHLS to determine the value of permitting or denying disclosure.  See id. at 190-91.

MHLS's unsubstantiated fear of "possible" reduced access to mental health facilities does not satisfy the initial "substantial threshold showing" because the harm that MHLS anticipates from Ms. Gest's disclosure is far too speculative.[5] Moreover, MHLS's concern that mental health facilities will not be as likely to grant MHLS unfettered access to patient records, facilities or personnel is unwarranted in view of the broad

---

[5] Although MHLS, an agency charged with the protection of the rights of mentally ill patients, seeks here to protect its own interests, the Court notes that the Stipulation and Order of Confidentiality governing the disclosure of patient information between the parties in this case should protect the privacy interests of the plaintiffs and other patients.

statutory authority granted to MHLS.  (See MHLS Mem. 7.)  MHLS's access to facilities and patient records is mandated by statute. See N.Y. Mental Hyg. Law § 47.03 (d) (MHLS is "[t]o be granted access at any and all times to any facility or place or part thereof . . . and to all books, records, and data pertaining to any such facility or place deemed necessary for carrying out its functions, powers, and duties").  Any facility that denies MHLS access to its records or books would be in violation of law, and MHLS's right to access would is enforceable in the state courts. Thus, regardless of whether a facility consents to MHLS's access or not, MHLS is statutorily authorized and duty bound to investigate a facility as it deems appropriate.  MHLS's fear of a chilling effect is thus unwarranted because of its broad legislative mandate.

Ultimately, plaintiffs' grievances and the rights they seek to vindicate in the instant action are consistent with MHLS's mission because MHLS's role is to protect the rights of patients with mental illness.  Similarly, the Touro Clinic is authorized by the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801. *et seq.*, to provide legal services to institutionalized, mentally ill persons.  Presumably, any mental health facility that denies rights to its patients and fails to comply with requests to change its practices may be brought into court by MHLS, based on its statutory mandate, or by

some other organization, such as the Touro Clinic, that seeks to protect patient rights.

### III.  CONCLUSION

For the foregoing reasons, the application by MHLS to quash plaintiffs' subpoena seeking Ms. Gest's testimony is denied. The parties are directed to schedule Ms. Gest's deposition at the earliest, mutually convenient date.

**SO ORDERED.**
Dated: August 14, 2006
       Brooklyn, New York

                                        /s/
                              **Kiyo A. Matsumoto**
                              United States Magistrate Judge
                              Eastern District of New York