UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROBERT SPARKS, on behalf of himself and all
others similarly situated, and MENTAL
DISABILITY LAW CLINIC, TOURO LAW
CENTER, on behalf of its constituents,                    **OPINION AND ORDER**

                     Plaintiffs,     05 CV 1061 (NG) (KAM)

   - against -

CHARLOTTE SELTZER, in her official
capacity as Executive Director of Creedmoor
Psychiatric Center, and PAULETTE FLOYD,
in her official capacity as Treatment Team
Leader at Creedmoor Psychiatric Center,

                     Defendants.
----------------------------------------------------------------x

**GERSHON, United States District Judge:**

Plaintiffs Robert Sparks ("Sparks"), on behalf of himself and all others similarly situated, and the Mental Disability Law Clinic of Touro Law Center, on behalf of its constituents, bring this action under 42 U.S.C. § 1983 against Charlotte Seltzer and Paulette Floyd[1] in their official capacities, alleging violations of the class's First Amendment rights and "zone of privacy". Pursuant to Rule 56 of the Federal Rules of Civil Procedure, both plaintiffs and defendants move for summary judgment.

## FACTS

The material facts pertinent to the resolution of both motions as set forth below are undisputed. Plaintiff Sparks is a patient on Ward 6A of building 40 at Creedmoor Psychiatric Center ("Creedmoor"), a New York state psychiatric hospital. Ward 6A is an inpatient, long-

---

[1] The death of Paulette Floyd was noted on the record on June 18, 2008. In accordance with Fed. R. Civ. P. 25(d), Lukisha Homer, her successor, is substituted in this action.

1

term locked ward which normally houses a mixture of voluntary patients, patients who have been involuntarily committed under the civil law, and patients committed as a result of a verdict of not guilty by reason of mental disease or defect or a finding of incompetence to stand trial. In the summer of 2004, responding to a perceived increase in the possession of contraband by patients after the hospital instituted a ban on indoor smoking, Creedmoor implemented a policy requiring supervision of at least some visits to patients on Ward 6A. Initially, patient visits were sometimes supervised without a written order from a doctor. However, at present, it is Creedmoor's policy that visits may be supervised only when a physician writes an order authorizing supervision, the order limits supervision to a specified period no longer than one month, and a clinical or safety reason exists for supervision.[2] Among the "clinical and safety" reasons which Creedmoor has offered as justification for supervised visits are a patient's violent or aggressively sexual behavior, a patient's prior possession of contraband, and a patient's prior suicide attempt.

Ward 6A has a designated visiting room. This room is regularly used by more than one patient at a time. Supervision is accomplished by a guard's sitting in or just outside the doorway of the patients' visiting room; also, a videocamera can transmit video (but not audio) of the visiting room to the nurses' station. A patient's conversation will ordinarily be audible to a guard supervising a visit. However, patients are not required to speak at a level audible to the guard, and conversations are not recorded. During supervised visits, patients are not forbidden from discussing any topic or from engaging in routine physical contact with their visitors.[3] Plaintiffs do not allege that any patient has suffered retaliation—formal or informal—for

---

[2] Although plaintiffs challenge the basis for some of the orders for supervision, they do not assert that Creedmoor is, in practice, violating its own policy by failing to obtain written orders specifying rationales before supervising visits.
[3] Patients are also generally permitted to make phone calls and write and receive mail.

anything said during a supervised visit. Nonetheless, some patients have stated that they are unwilling to discuss personal matters or concerns about treatment or conditions at the hospital within earshot of a guard.

On February 25, 2005, plaintiffs commenced this action, which challenges the Creedmoor policy both facially and as applied and seeks declaratory and injunctive relief. Initially, plaintiffs' complaint included three counts, arising out of three different Creedmoor policies: the policy regarding supervised visitation discussed above, a policy allegedly restricting telephone access for patients, and a policy allegedly restricting visitation during "lockdowns". On November 22, 2005, this court certified a class with respect to plaintiffs' first count of "all individuals (a) who are presently confined or who will be confined in the future on ward 6A, building 40, of Creedmoor Psychiatric Center, and (b) who will receive visitors during their period of confinement". Plaintiffs withdrew their second and third counts on May 15, 2007. Plaintiffs and defendants have now both moved for summary judgment.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), but "must come forward with specific facts showing that there is a genuine issue for trial," *Matsushita*, 475 U.S. at 586-7 (emphasis removed).

## II. Defendants' Motion for Summary Judgment

A. First Amendment Claim[4]

Defendants move for summary judgment against plaintiffs on their First Amendment claim, arguing that plaintiffs have not established that Creedmoor's policy of supervised visitation has chilled patients' exercise of their First Amendment right of expression.

The courts have long recognized that a law may infringe on the First Amendment by "chilling" protected speech as much as by forbidding it outright, often in the context of overbroad or vague legislation. *See, e.g., Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002); *Baird v. State Bar*, 401 U.S. 1, 6 (1971); *Keyishian v. Board of Regents*, 385 U.S. 589, 603-04 (1967); *Zieper v. Metzinger*, 474 F.3d 60, 65-66 (2d Cir. 2007). However, in such cases, those complaining of a "chill" ordinarily have been faced with the prospect of criminal liability (as in *Ashcroft* and *Zieper*), exclusion from the state bar (*Baird*), the loss of public employment (*Keyishian*), or some other specific injury as threatened punishment for the speech that has been chilled.

---

[4] Plaintiffs initially argued that the policy of supervised visits violated patients' freedom of association as well as freedom of speech. Plaintiffs now indicate that they do not assert an independent freedom of association claim.

In contrast, courts have found that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). In *Laird*, the plaintiffs objected to the widespread and systematic gathering of information regarding "potential for civil disorder" by Army intelligence officers, including surveillance of public political meetings. As the plaintiffs did not allege any specific harm that they had suffered or expected to suffer as a result of this kind of surveillance, the Court found that they had not experienced a chill. Similarly, in *Fifth Avenue Peace Parade Comm. v. Gray*, 480 F.2d 326 (2d Cir. 1973), FBI agents had examined the bank records of an organization sponsoring a protest and photographed protestors boarding buses to the protest site. The Second Circuit denied relief because plaintiffs had not alleged that any specific harm had come or would come to plaintiffs as a result of the government's actions. *Id*. at 333. *See also Hankard v. Town of Avon*, 126 F.3d 418, 423 (2d Cir. 1997); *Handschu v. Special Servs. Div.*, 475 F. Supp. 2d 331, 354 (S.D.N.Y. 2007), *order vacated on reconsideration on other grounds*, 2007 WL 1711775 (S.D.N.Y. Jun 13, 2007).[5]

Plaintiffs argue that the supervision of visits has chilled the speech of Ward 6A patients who are unwilling to discuss certain matters in the presence of a guard. Thus, although patients are theoretically permitted to discuss any topic they choose with their visitors, in effect, they argue, they have been prevented from doing so. Defendants counter that, since plaintiffs have not pointed to any actual or threatened retaliation against patients for anything that they might

---

[5] In the distinctive factual context of *Laird*, the Supreme Court required the demonstration of present or future harm to establish the claim's *justiciability*. However, some lower courts applying *Laird* have instead characterized present or future harm as a necessary *element* of the claim. *See Handschu*, 475 F. Supp. 2d at 355. Although the parties dispute which rubric is more appropriate, it is not necessary to resolve the question to determine the outcome here.

say during their visits, plaintiffs have not made the "claim of specific present objective harm or a threat of specific future harm" necessary to establish that their speech has been chilled.

As an initial matter, the court rejects defendants' argument that patients' speech during visits, which might lack an important political or social purpose, is wholly unprotected by the First Amendment. Although casual conversation among family members or friends may not necessarily implicate the highest of the political and social concerns underlying the First Amendment, this does not imply that such speech is undeserving of its protection.[6] The First Amendment protects the right to share information and ideas "regardless of their social worth". *Stanley v. Georgia*, 394 U.S. 557, 564.[7]

Here, plaintiffs have claimed only that patients and their visitors have been reluctant to discuss various matters within earshot of a supervising guard. It may indeed be difficult to discuss one's personal affairs in an atmosphere with little privacy. Nonetheless, plaintiffs have made no claim that any patient has lost privileges, had the term of his involuntary hospitalization extended, or otherwise been punished or threatened with being punished for anything he or a visitor has said in a supervised visit. Plaintiffs thus have simply not demonstrated a "present objective harm or…threat of specific future harm" adequate to establish a cognizable injury arising from the policy on its face or as applied to any of them. Indeed, unlike in *Laird, Fifth Avenue Peace Parade,* and *Handschu*, it does not even appear on this record that the purpose of the supervision is to gather information about patients for future use. Patients are not required to speak loudly enough to be heard; guards do not generally report the contents of conversations to

---

[6] Further, conditions at a public hospital might indeed be a matter of significant public interest.
[7] Defendants' argument that Creedmoor is free to regulate patients' speech under the relatively undemanding nonpublic-forum standard is similarly unpersuasive. Defendants have cited no case law, and this court is aware of none, suggesting that it is appropriate to apply a forum analysis with respect to the communications of the institutionalized.

Creedmoor authorities; and no sound recordings of visits are made. In sum, that patients may have felt reluctant to disclose personal matters in front of strangers does not rise to the level of a well-founded concern that information a guard overhears will be used against them.

Plaintiffs' argument that the supervision of visits is so contrary to therapeutic objectives that it should be considered a "punishment" and thus constitutes an objective harm is an attempt to recast the overhearing of conversations, without more, as injury.[8] However, the gathering of information by the government, even under much more ominous circumstances, is precisely what the Supreme Court has held does *not,* without more, create a chill that infringes on First Amendment rights. Plaintiffs have simply not established that patients have experienced a cognizable injury.

In light of this conclusion, while plaintiffs urge that any chill on patients' speech must be evaluated under the standard of strict scrutiny[9] and defendants counter that a standard analogous to the standard for restriction on prison inmates' speech is more appropriate, it is not necessary to reach the question of which standard is applicable here.

Summary judgment is thus granted for defendants on plaintiffs' First Amendment claim.

B. Plaintiffs' "Zone of Privacy" Claim

In addition to their First Amendment claim, plaintiffs also assert what they characterize as a "zone of privacy" claim. This claim was not included in the complaint and has been raised

---

[8] In support of this argument, plaintiffs offer little more than the uncontroversial opinion that it is desirable for mental patients to trust their doctors and to exercise autonomy in their treatment when possible.

[9] Plaintiffs concede that Creedmoor's interests in preventing violence by patients and the introduction of contraband into the hospital *are* compelling justifications for supervision, but deny that other "clinical" justifications are adequate.

7

for the first time in plaintiffs' motion for summary judgment.[10] Defendants move for summary judgment against this claim.

It is difficult to discern from plaintiffs' briefing the precise basis of their "zone of privacy" claim, as they never directly state what constitutional right they believe defendants to have violated. Plaintiffs suggest, without ever explicitly claiming that the supervision of visits violates their Fourth Amendment rights, that it is appropriate to use the analysis developed in Fourth Amendment cases to determine whether defendants have infringed plaintiffs' asserted general "right to communicate in private." But, under Fourth Amendment jurisprudence, patients cannot be said to have a reasonable expectation of privacy in a hospital visiting room which may be entered by anyone during a visit and which indeed is used by more than one patient at a time for visits. The Fourth Amendment protects only those conversations conducted with a reasonable expectation of privacy. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967); *see also Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995). Plaintiffs therefore have no basis for a Fourth Amendment claim.[11]

---

[10] Defendants have not objected to plaintiffs' raising this "zone of privacy" claim now, but the court grants their request to deem their motion for summary judgment to be directed against this claim as well.

[11] Plaintiffs also cite to cases such as *Paul v. Davis*, 424 U.S. 693 (1976), and *Whalen v. Roe*, 429 U.S. 589 (1977), in which the Supreme Court recognized that the Fourteenth Amendment may protect some "zone of privacy" for certain highly personal decisions or information. However, "[t]he precise contours of a constitutional right to privacy are not clearly established." *Webb v. Goldstein*, 117 F. Supp. 2d. 289, 296 (E.D.N.Y. 2000); *Barry v. City of New York*, 712 F.2d 1554, 1558 (2d Cir. 1983). Plaintiffs' claims do not involve the kind of compelled disclosure to the government or nonconsensual dissemination by the government of personal information which certain Second Circuit cases (on which plaintiffs do not rely) have found to implicate the Fourteenth Amendment. *See, e.g., Powell v. Schriver*, 175 F.3d 107, 111-12 (2d Cir. 1999); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994). Creedmoor's policy of supervised visits thus does not, on its face or as presently applied, infringe patients' Fourteenth Amendment rights.

Summary judgment is thus granted to defendants on plaintiffs' "zone of privacy" claim.

### III. Plaintiffs' Motion for Summary Judgment

As plaintiffs' motion effectively mirrors defendants', summary judgment is denied on all plaintiffs' claims for the reasons given above.

### CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied. The Clerk of Court is directed to enter judgment for defendants.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
April 20, 2009